UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| v. | ) | Cr. No. 08-10385-RGS |
| | ) | |
| | ) | |
| PRUDENCE KANTENGWA, | ) | |
| a/k/a PRUDENTIENNE KANTENGWA, | ) | |
| Defendant | ) | |

### GOVERNMENT'S APPEAL OF MAGISTRATE JUDGE'S DISCOVERY ORDER OF JUNE 5, 2009 AND DENIAL OF MOTION FOR RECONSIDERATION

Now comes the United States in the above-entitled action and requests that this Court reverse the order of the Magistrate Judge directing the United States to provide certain additional discovery to the defendant in the above-captioned case.

## I.    Standard of Review

The standard of review of a pre-trial order by a United States Magistrate Judge is whether the order was clearly erroneous or contrary to law.  28 U.S.C. §636(b)(1)(A)[1].  <u>See</u> <u>United States v. Santiago-Berrecil</u>, 130 F.3d 11, 15 (1st. Cir. 1997)(enunciating "clear error" standard for review of factual findings, and *de novo* review for legal rulings pertaining to, in that case, Speedy Trial Act issues);  Rule 2 of the Rules for

---

[1]The Magistrate Judge Jurisdictional statute provides, in relevant part: "(A) a judge may designate a magistrate judge to hear and determine any pretrial matter pending before the court[] .... A judge of the court may reconsider any pretrial matter under this subparagraph (A) where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law."  28 U.S.C. §636(b)(1)(A).

United States Magistrate Judges in the United States District
Court for the District of Massachusetts (hereinafter "Local
Magistrate Rules").  In relevant part, the Local Magistrate Rules
provides as follows:

>       (a) A magistrate judge may hear and determine any
>   pretrial motion or other pretrial matter in accordance
>   with 28 U.S.C. §636(b)(1)(A) ...
>
>       (b) ... The district judge to whom the case is
>   assigned will consider such objections and will modify
>   or set aside any portion of the magistrate judge's
>   order determined to be clearly erroneous or contrary to
>   law.
>
>       (c) The ruling or order of a magistrate judge in a
>   matter that is heard and determined under subsection
>   (a) hereof is the ruling of the Court and is final
>   unless reversed, vacated or modified by a district
>   judge as provided in ... subsection (b) hereof...Any
>   party desiring a stay of a magistrate judge's ruling or
>   order, or any part thereof, pending ruling on
>   objections filed under subsection (b) hereof, must
>   first apply therefor to the magistrate judge from whose
>   ruling the objection is taken...

Local Magistrate Rule 2.

       Consequently, when a U.S. Magistrate Judge has been referred
a case, the matters properly within the Magistrate Judge's
discretion may only be modified or set aside by the District
Judge if the factual or legal basis are determined to be clearly
erroneous or contrary to law, or if the Magistrate Judge did
consider the proper factors, if she abused her discretion. Id.
See United States v. Kelley, 402 F.3d 39, 41 (1st Cir.
2005)("...[U]nder the Speedy Trial Act, 18 U.S.C. §3161-3174, we
review the trial court's rulings of law *de novo*, its factual

findings for clear error, <u>United States v. Ramirez</u>, 973 F.2d 36, 38 (1st Cir. 1992), and its ultimate ruling for abuse of discretion, <u>United States v. Trueber</u>, 238 F.3d 79, 87 (1st Cir. 2001).")

This Objection was filed pursuant to Local Magistrate Rule 2 and is properly an objection to the June 5, 2009 Order[2] (and subsequent denial of a motion for reconsideration) pursuant to Local Magistrate Rule 2(b). The standard of review is *de novo*, because the Magistrate Judge's ruling was contrary to law.

**II. Magistrate Judge Dein's rulings with regards to the government's obligation to reconstruct every reference material, text book or media which anyone in the State Department who reviewed the defendant's visa application had ever referenced is contrary to the rules and principles of discovery law.**

**A. <u>Counts One and Fifteen, and the State Department's Determination to Issue a Visa Based on False Information from Defendant</u>**

In Counts One and Fifteen, the defendant Prudence Kantengwa is charged with violation of Title 18, United States Code, Section 1546 (fraud and misuse of visas), based on her use and/or possession of a visa to enter the United States that was obtained fraudulently based on false statements and information she

---

[2]The United States filed a timely motion for reconsideration and motion for additional time within which to appeal the Magistrate Judge's discovery order (pending consideration by the Magistrate Judge of the government's motion for reconsideration). On July 15, 2009, the Magistrate Judge denied government's motion for reconsideration, and granted the government 10 days from said date within which to appeal. Thus, this appeal is timely.

provided in connection with a visa application.  As alleged (in part) in introductory paragraph 10 of the Indictment, she falsely answered questions about her and her husband's membership in the Rwandan political party known by the initials MRND.  See, also, introductory paragraph 2.  In addition, although her husband was the head of the Internal Security Service of Rwanda both before and during the genocide in Rwanda in 1994, she denied that any family member was ever a member of the Service.  See introductory paragraphs 9 and 10.

The allegations of the indictment are that these false statements were material to her visa application.

**B.    Defendant's Discovery Request**

The defendant has filed numerous and expansive discovery motions, that have been supplemented on more than one occasion. Relevant to this appeal of the Magistrate Judge's discovery order, the defendant requested *inter alia*

> ... all documents, data entries, notes and email, and communications, which were generated, used, reviewed or prepared in connection with the evaluation of defendant's several[3] applications for a visa.

> ... all documents, data entries, notes, email, and communications, and reduce to writing any oral statements, which refer or relate to reasons each denial or allowance of defendant's applications for a visa.

---

[3]The defendant applied for several visas to both the United States and Canada, but was rejected on each occasion, prior to the issuance of the visa that is at issue in connection with Counts One and Fifteen of the indictment.

4

Defendant's Motion for Discovery (March 20, 2009), at page 10.

    **C.**   **The State Department File and What has been Produced to Date**

    The government has produced every document comprising the file concerning the defendant's visa application.  After an exhaustive review which was coordinated through State Department legal counsel's office, the government produced all of the substantive documents generated by the State Department as a result of its review of the defendant's visa application.  The government has produced the visa application itself (with the Rwanda Questionnaire), the defendant's prior visa applications, the consular database record of the prior visa applications and their refusals, the outgoing cable requesting a security advisory opinion from the coordination office of the State Department's headquarters, and the response cable from that office to Nairobi which indicated that there was no objection to the issuance of the defendant's visa.  The government also provided hundreds of pages of regulations and guidance concerning the issuance of visas which are publicly available in the Foreign Affairs Manual ("FAM") on the State Department website, in particular, Chapter 9 (http://www.state.gov/m/a/dir/regs/fam/c22167.htm).  In addition, the government provided a copy of the electronic version of the May 2002 version of the FAM.[4]

_____

    [4]The government has also produced approximately 2000 pages of documents and 36 audiocassette tapes.  These materials

As it did with the State Department Foreign Affairs Manual
and consistent with the government's practice of providing
records and regulations related to the review of Rwandan visa
applicants, the government voluntarily provided additional
materials evincing the State Department practice in review of
Rwandan visa applicants; these were: First, three documents which
the State Department possessed at the time of the defendant's
visa application with regard to the requirements and issues
related to the review of Rwandan visa applicants.  Secondly, two
items of meta-data (computer screenshots which were used to
locate the previously produced records) pertaining to the
defendant's application: 1) a record that the case was assigned
and cleared in the Visa Coordination office, and 2) the
information in the State Department's security database at the
time of the defendant's visa application reflecting her prior
visa applications, and the fact that she was *not* on any State
Department genocidaire list at the time.  Thirdly, the record of

include, among other things, statements of the defendant in
submissions to U.S. Immigration Services (ICE and CIS) and to the
Immigration Court, a newspaper article about the defendant,
recordings of Immigration Court proceedings, transcripts of
testimony of defendant before the Immigration Court, the
defendant's Alien File, documents filed by defendant's counsel in
Immigration Court, search warrant materials and items seized
during execution of the search warrants, trial exhibits from the
publicly accessible files of the International Criminal Tribunal
for Rwanda related to a roadblock in Butare, and official
documents obtained from Sonarwa (the company the defendant worked
for in Rwanda in 1994), MIFOTRA, the Rwandan Social Security
office, and the Rwandan Immigration and Emigration office.

the revocation and the cable communicating the revocation of the
defendant's visa in 2008.

There are no additional documentation evincing the
particulars of what types of deliberative review occurred at the
State Department during the review of the Defendant's visa
application.  The defendant's characterization of the visa-
application review process has not been accurate, and among other
problems, may have led to the impression that no documents
produced in discovery evince a State Department headquarters
review.  However, while there is no document which delineates the
deliberative process itself, the issuance of a responsive cable
from State Department headquarters to Nairobi memorializes the
fact of the State Department headquarters review of Kantengwa's
visa application.  The defendant may be seeking more visibility
into that process on her case, but she is asking for document(s)
which do not exist.

### D.  **The Discovery Order of the Magistrate Judge**

On June 5, 2009, the Magistrate Judge issued an order
granting in part and denying in part defendant Prudence
Kantengwa's discovery motion.  In particular, the Court ordered
as follows:

> the government is required to produce all documents
> comprising, referring or relating to Kantengwa's visa
> application which were reviewed by all levels of State
> Department personnel, which review led to the February
> 2002 decision that the State Department had no
> objection to the issuance of the visa.

7

Order, at page 8.

In the Order of the Magistrate Judge, the Magistrate Judge suggested that these documents "could be of critical importance in assessing the materiality of Kantengwa's answers." As an example of why these documents could be important, the Magistrate Judge provided an example:

> if the file reviewed by the State Department contained contrary information about Kantengwa's party affiliation or her husband's government position, such information would go far to challenge the government's claim that the answers were material because they "could have provoked governmental action[.]" <u>See</u> <u>[United States v.] Sebagqala</u>, 265 F.3d [59,] at 65 [(1st Cir. 2001].

Order at pages 7-8.

### E.   Legal Argument

#### 1.   The Scope of the Order and the Definition of "Materiality" in a False Statement Case

Essentially, by the scope of her discovery order, the Magistrate Judge seemed to be reasoning that, if the State Department file contained, for example, information that, contrary to her answers, she *was* a member of the MRND and that her husband was director of the Service de Renseignment, and the visa was nevertheless issued, then the (false) answers she provided were not and could not have been material.

During the hearing before the Magistrate Judge on defendant's motion, defense counsel repeated the argument made in his filings that, to prove materiality, the government was

required to prove that a truthful answer would have resulted in
the denial of the defendant's visa application.  During the
hearing, the Magistrate Judge correctly rejected this argument
and (as in the Magistrate Judge's Order quoted above) recognized
that <u>Sebaggala</u> defines materiality as something that could have
"provoked governmental action," and not necessarily could have
changed the ultimate governmental decision.  However, in it's
Order, the Magistrate Judge essentially abandoned that
distinction in ordering discovery.

It is clear that, even if the State Department's file
contained "contrary information about Kantengwa's party
information," her (false) answer would have and could have
"provoked governmental action."  Using the example cited by the
Magistrate Judge, if the State Department file contained
information identifying the defendant as a member of the MRND, at
a minimum, government personnel could have and likely would have
done a number of things.  First, the State Department employee
would have had to determine whether the "Prudence Kantengwa"
identified as a member of the MRND was the same person as the
"Prudence Kantengwa" (also known as "Prudentienne Kantengwa") who
was applying for a visa.  There are any number of steps (<u>i.e.</u>,
governmental action) the employee might take in an effort to make
that determination.  Second, the employee would have likely
sought to determine the reliability of the list that included

9

Kantengwa as an MRND member and whether it was sufficiently reliable to rebut Kantengwa's statement.  Again, there are any number of steps (i.e., governmental action) the employee might take in an effort to make that determination.  Third, the employee might have sought to determine if Kantengwa played any leadership role in the MRND, before deciding whether such membership should disqualify her from receiving a visa; while mere membership might not have been a disqualifying fact, leadership or advocacy of the anti-Tutsi rhetoric and actions of the MRND might have been.  The search for an answer to that question would similarly have required a great deal of "governmental action."  This list is not intended to be exhaustive, but merely a tangible description of how a reasonable official reviewing Kantengwa's application would respond to the answers she provided.  The reason the answers concerning MRND could reasonably influence a decisionmaker is simply that MRND membership was material to the inquiry of whether Kantengwa should be granted a visa.  MRND membership would evidence a relationship to the genocidal government and potentially the genocide in Rwanda, and that is why it was included as a question on the Rwandan Questionnaire, i.e., that is why it was "material."

    The defendant in her discovery motion essentially argued that she was entitled to know everything that the government knew

about the defendant and about the history of the Rwandan genocide as related to the defendant and her visa application.  This argument was made on the faulty premise that if the government knows the defendant was lying (or had evidence to contradict the defendant's statement), then the lie would not be material. Since the standard is whether the information "could have provoked governmental action," that is, action by a government employee in connection (in this case) with the defendant's application for an immigration benefit, the lie is material regardless of what the government knew, or what other sources of information the government possessed.

The standard for materiality in the context of a false statement or perjury case is considerably less than whether a defendant would otherwise be eligible for a benefit.  <u>See</u> <u>Sebaggala</u>, 256 F.3d at 64 ("The test of materiality is whether the false statement in question had a natural tendency to influence, or was capable of influencing, a governmental function.  Thus, if a statement could have provoked governmental action, it is material regardless of whether the agency actually relied upon it."); <u>United States v. Notarantonio</u>, 758 F.2d 777, 784-86 (1st Cir. 1985); <u>United States v. Arcadipane</u>, 41 F.3d 1, 7 (1st Cir. 1994)(A statement is material if it has "a natural tendency to influence, or [is] capable of affecting or influencing, a government function.").  The government does not

have to prove that a truthful answer to the questions asked would
have resulted in denial of the immigration benefit sought by the
defendant.  Thus, the defendant is not entitled to discovery in
order to further an argument that the false statements were not
"very" material, were unimportant, or that the statements made no
difference to the outcome of an administrative decision.

### 2.    **The Proper Scope of Discovery**

Rule 16(a)(1)(E)(I) provides for discovery of documents and
certain objects if the defendant shows that disclosure of the
document or object is material to the defense.  Fed.R.Crim.P.
16(a)(1)(E)(I) (formerly 16(a)(1)(C)).   To even invoke the rule,
the defendant must first make a *prima facie* showing that specific
evidence which is in the possession of the government is material
to the defense against the government's case in chief.  See
United States v. Olano, 62 F.3d 1180, 1203 (9th Cir.
1995)(defendant must present fact that shows that Government
possesses information helpful to the defense); United States v.
Armstrong, 517 U.S. 456, 462 (1996)(a request under Rule
16(a)(1)(E) is improper to support a selective prosecution
claim).  In this case the defendant has made no showing, rather
has only attempted to make a logical argument that there could
exist information which might be material or helpful to the
defense.  United States v. Maniktala, 934 F.2d 25, 28 (2d Cir.
1991)("There must be some indication that the pretrial disclosure

12

would ... [enable] the defendant significantly to alter the
quantum of proof in his favor.").  The defendant relies wholly on
speculation and conjecture (and an incorrect statement of the
meaning of "materiality" as an element of the charged offenses in
this case).

Materiality (in the discovery context) means more than the
evidence in question bears some abstract or logical relationship
to the issues in the case.  Instead, the defendant must show that
the pretrial gathering and disclosure of such materials would
enable her to substantially alter the quantum of proof in her
favor.  See United States v. Vue, 13 F.3d 1206, 1208 (8th Cir.
1994)(applying Brady materiality); United States v. Graham, 83
F.3d 1466, 1473 (D.C. Cir 1996); United States v. Marshall, 532
F.2d 1279, 1285 (9th Cir. 1976); United States v. Pesaturo, 519
F.Supp.2d 177, 190-191 (D.Ma. 2007)(Sorokin, M.J.) (review of
cases which discuss the meaning of materiality for purposes of
Rule 16(a)(1)(E), formerly 16(a)(1)(C), finding no binding
standard); United States v. LaRouche Campaign, 695 F.Supp. 1290,
1306-107 (D.Ma. 1988)(Keeton, D.J.)(finding that 16(a)(1)(E)
materiality tracks Brady, that is, a reasonable probability that
if disclosed, the result of the criminal proceeding will be
different, e.g., Strickler v. Greene, 527 U.S. 263, 280 (1999)).

In addition at least two cases stand on all fours for the
proposition that, even if the government knew the defendant was

13

lying and, therefore, the false statements could *not* have affected the agents' actions, nevertheless, a false statement to the agents can still be shown to be material.  In <u>United States v. Turner</u>, 551 F.3d 657 (7th Cir. 2008), the Court of Appeals for the Seventh Circuit rejected an argument by the defendant that "the statements he made to the special agents were not material because the agents already knew the answers to the questions before they asked him."  551 F.3d at 662.  Because the standard is whether the information had "a natural tendency to influence or [be] capable of influencing," the defendant's statements which "were aimed at misdirecting the agents, ... satisfy the materiality requirement."  551 F.3d at 663-664.

    Similarly, in <u>United States v. McBane</u>, 433 F.3d 344 (3rd Cir. 2005), the Court of Appeals for the Third Circuit affirmed the defendant's conviction for false statements by a police officer concerning a confiscated rifle.  In that case, an informant, who bought the rifle from the officer (and then returned it at the officer's request when the FBI began investigating), recorded conversations with the defendant concerning the sale and return of the confiscated rifle.  During one of the recorded conversations, that occurred after his interview by the FBI, the officer told the informant about his FBI interview and admitted that he had lied to the agents.  433 F.3d at 346-347.  In that case, the "Government concede[d] that

14

[the defendant's] false statements did not influence and were not capable of influencing the decisions or actions of the particular Agents to whom [the defendant] made the statements." 433 F.3d at 350. Nevertheless, the Court held that the statements were material because they were of the "type [that are] capable of influencing a *reasonable* decisionmaker." 433 F.3d at 351. The Court stated:

> In our view, the phrase "natural tendency" connotes qualities of the statement in question that transcends the immediate circumstances in which it is offered and inhere in the statement itself.

433 F.3d at 351. <u>See also</u> <u>United States v. Edgar</u>, 82 F.3d 499, 510 (1st Cir. 1966) (affirming the conviction of a defendant for false statements in connection with workmen's compensation benefits even though the decision had already been made and the forms filed late (so that, in this case, the lies could not have affected the decisionmaker), because the statements were of the kind that could influence a decision concerning benefits.)

### 3. __The Impractical Overbreath of the Order__

There are pragmatic issues with the breadth of the court's order requiring production of any materials "referring or relating to" the defendant's visa application. The Magistrate Judge's current order can be read to require the investigation, documentation, and production of the minutes of the State Department's entire deliberative process. It is not possible to fully reconstruct every relevant piece of information which a

15

reviewing individual may have considered before rendering a decision; e.g., a syllabus of every class on the genocide attended by a decisionmaker, every book they had read on Rwanda, every person consulted in the review process, every post which reviewed the questionnaire, every agency from which clearance was sought, et cetera, in short, a description of all of the unmemorialized discussions that occurred, or pieces of information which were seen, reviewed, read, or consulted during the review of the defendant's particular visa application.  In effect, the order of the Magistrate Judge, if left undisturbed, would require, in every criminal case charging a false statement on a written application, that the government recreate the books on the shelves of the personnel who review any application for a government benefit.  Such a burden is neither dictated by the law, nor practical sense.  To the extent that any documents were generated from such review, they have been produced, and to the extent that any such documents tend to show that the defendant's statements were not material, they would be produced if they existed.

## III. Conclusion

For the reasons stated herein, the Government requests that this Court reverse the Order of the Magistrate Judge that directed the government to produce "all documents comprising, referring or relating to Kantengwa's visa application which were

reviewed by all levels of State Department personnel, which review led to the February 2002 decision that the State Department had no objection to the issuance of the visa" (to the extent that the Order requires the production of any additional materials).

Respectfully submitted,

MICHAEL K. LOUCKS
Acting United States Attorney

By:    /s/  Jeffrey Auerhahn
JEFFREY AUERHAHN and
ALOKE S. CHAKRAVARTY
Assistant U.S. Attorneys

## Certificate of Service

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), on this 24th day of July 2009.

/s/ Jeffrey Auerhahn
Jeffrey Auerhahn
Assistant U.S. Attorney