**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| v. | ) | Cr. No. 08-10385-RGS |
| | ) | |
| | ) | |
| PRUDENCE KANTENGWA, | ) | |
| a/k/a PRUDENTIENNE KANTENGWA, | ) | |
| Defendant | ) | |

**GOVERNMENT'S MOTION IN LIMINE TO PRECLUDE**
**ADMISSION IN EVIDENCE OF DECISION BY IMMIGRATION JUDGE[1]**

The Government moves *in limine*, pursuant to Federal Rules of Evidence 401, 403 and 803, to exclude any reference to the Decision of the Immigration Judge ("IJ Decision") in the asylum proceeding, In the Matter of Prudence Kantengwa, which is the proceeding in which the defendant is charged with committing perjury by denying her membership and that of her husband in the MRND, the political party in power during the Rwandan genocide, and by denying awareness of a roadblock outside her residence during the genocide.[1] The IJ Decision is inadmissible for several inter-related reasons. First, it is not relevant to proof of materiality in this case. Second, it is inadmissible hearsay not with an exception the hearsay rule. Finally, the IJ Decision is inadmissible under Rule 403, because its probative

---

[1]The government further submits the substance of this motion as an opposition to the Defendant's Motion In Limine On Immigration Order, filed on this date.

[1]This includes direct or indirect reference to the IJ's Decision such as subsequent litigation and the ruling of the Board of Immigration Appeals ("BIA").

value is substantially outweighed by the danger of misleading the jury and of taken from the jury a factual question exclusively within its province.

As an initial matter, the defendant's suggestion that this Court admit the IJ Decision in evidence runs afoul of the well-established rule that, in criminal cases, the question of materiality is one for the jury. *See United States v. Gaudin*, 515 U.S. 506, 523 (1995).  This is so because admission of the IJ Order in evidence would be tantamount to inviting the jury to replace its own assessment of the evidence with the findings of an IJ in a different proceeding, applying a different standard and addressing different questions under different rules of evidence.  Put simply, the assessment of the IJ has no legal significance whatsoever in this criminal action.

As discussed below, the focus of the IJ's inquiry was fundamentally different from the question to be presented to the trial jury in this case that the IJ Decision is irrelevant to any fact to be decided by the jury.  The IJ decision is thus inadmissible under Rule 401.  Morever, pursuant to Rule 403, even relevant evidence "may be excluded if its probative value is substantially outweighed by the danger . . . misleading the jury . . . ." Fed. R. Evid. 403.  Because the IJ's inquiry was fundamentally different, the purportedly probative value of the IJ Decision is limited.  More important, though, admission of the

decision is likely to confuse the jury and cause jurors to make improper inferences about the significance of the IJ's findings. Thus, assuming *arguendo* the relevancy of the IJ Decision, the potential confusion dramatically outweighs the probative value of the evidence.

Indeed, the IJ's inquiry did not turn on the truth of the defendant's assertions concerning her membership or that of her husband in the MRND or the existence of a roadblock at the defendant's. The IJ's findings were limited to those necessary to adjudicate the defendant's asylum claim, defined as follows:

> The issues presented in this case are: (1) whether the Respondent has established a well-founded fear of persecution based on either her relationship to her late husband or her brother; and (2) whether the evidence establishes that the Respondent assisted in the persecution of others during the genocide in Rwanda in 1994 so as to bar her eligibility for asylum and withholding of removal.

IJ Decision at 9.

Indeed, as the defendant previously conceded (*see Def. Memo. Docket Entry 112* at 27), the IJ did not find that the defendant was not a member of the MRND, but instead found that "the extent of her membership and involvement in the MRND was unknown." Def. Memo. at 27. Moreover, with regard to the existence of a roadblock, the IJ did not find that there was no roadblock in place at the relevant time. The IJ merely found that the evidence presented did not "conclusively establish that the

roadblock was in operation during the time the [defendant] was there," I.J. at 52.  Indeed, because the IJ found that neither the defendant's MRND membership nor the existence of a roadblock implicated "the heart of [the defendant's asylum] claim," she chose not to decide those facts.  *See* Immigration Decision at 52.

Thus, the IJ's inquiry concerning MRND membership and the existence of the roadblock was limited to whether, as a matter of administrative immigration law, these issues went to the "heart of the matter."  The government is aware of no authority that the "heart of the matter" means the same as "material" for purposes of a perjury prosecution.  On the contrary, under the well-established test of materiality – whether the false statement in question had a natural tendency to influence, or was capable of influencing, a governmental function – the question is not, as the defendant suggests, whether the falsehood actually influenced governmental action.  Instead, the question is whether the information in question is of the type relied upon by the agency and of the type capable of influencing a reasonable decisionmaker.  This is true whether or not it actually influenced the particular decisionmaker in the administrative proceeding at issue.

Indeed, the IJ recognized the distinction between a lie that goes "to the heart of the matter" and whether a lie is "material," and that they are not the same thing. *See, e.g.,* I.J.

4

at 51 ("the Respondent's misrepresentation on the Rwanda Questionnaire that none of her immediate family was ever a member of the "Service de Renseignment" is material, yet not central, to her asylum claim").

The nature of the questions at issue here make plain why the test for materiality is not nearly as stringent as that suggested by the defendant and why the IJ Decision is therefore irrelevant to the question of materiality.  For example, if the defendant had stated that she saw a roadblock at her family's hotel, the cross-examiner would predictably have asked a series of follow-up questions: Did you work at the roadblock?  Did you provide support to those working at the roadblock?  Did you provide encouragement to those working at the roadblock?  The defendant's denial of any knowledge of a roadblock foreclosed that line of questions.  Moreover, as discussed above, the IJ did not decide whether the lies about the roadblock were material; she more narrowly decided "[w]hile the Respondent's 'denial' of the roadblock would be deeply disturbing, it again does not implicate the heart of her claim."  IJ Decision at 52.  Similarly, the IJ' decision concerning political party membership by the defendant's husband was limited to the conclusion that "her husband's membership in the MRND does not implicate the heart of her asylum

claim."  I.J. at 51.[2]

The conclusion in the IJ decision that the lies charged in the indictment do not go to "the heart of the matter" does not reflect the standard for materiality applicable here.  To establish that a false statement is material, the government does not have to prove that a truthful answer would have changed the ultimate decision, that is, the government does not have to prove that the lie actually affected the inquiry.  "[T]he test for materiality is a broad one." *United States v. Scivola*, 766 F.2d 37, 44 (1st Cir. 1985).[3]  "The test of materiality is whether the false statement in question had a natural tendency to influence, or was capable of influencing, a governmental function.  Thus, if a statement could have provoked governmental action, it is material regardless of whether the agency actually relied upon it." *United States v. Sebaggala*, 256 F.3d 59, 64 (1st Cir. 2001); *United States v. Notarantonio*, 758 F.2d 777, 784-86 (1st

---

[2]For a more thorough discussion of the limited factual and legal focus of the IJ decision, see Government's Opposition to Defendant's Motion to Dismiss Counts Three Through Thirteen of the Indictment on Grounds of Collateral Estoppel (Docket Entry 121).

[3]*Cf. United States v. Silver*, 235 F.2d 375 (2d Cir. 1956) ("a fact deliberately or willfully misstated in a matter of appropriate governmental inquiry seems properly punishable even if it is only a gratuitous red herring.  As such it can of course obstruct, delay, or deflect an inquiry which is pressing home to uncover fraud upon the government. ... In all probability a lie in a matter within ... jurisdiction [of a department or agency of the United States] will rarely, if ever, prove to be immaterial." 235 F.2d at 377-378.

Cir. 1985); *United States v. Arcadipane*, 41 F.3d 1, 7 (1st Cir. 1994); *United States v. Corsino*, 812 F.2d 26, 30 (1st Cir. 1987). The alleged misrepresentation need not actually influence the actions of the government to be considered material.  *Arcadipane*, 41 F.3d at 7; *United States v. Stella Perez*, 781 F.2d 229, 234 (1st Cir. 1985).

Put another way, the question is not whether the false information actually affected a government function, but whether the information provided was "the type of information relied upon" by the executive (investigative) agency.[4]  *United States v. Blasini-Lluberas*, 169 F.3d 57, 67 (1st Cir. 1999).

The issue is not whether in the case before the court the lies of the defendant could have affected the governmental action, but whether the information was of the type that the investigators or finder of fact rely on in connection with the matter under inquiry.  That is why, in false statement cases, even if the government knew the defendant was lying and,

---

[4]The defendant's erroneously relies on <u>Fed. Ins. Co. V. HPSC, Inc.</u> 480 F.3d 26 (1st Cir. 2007) to suggest that the IJ Decision is relevant because it tends to make it less likely that the statements at issue were material.  *See* Def. Motion in Limine at 4.  480 F.3d at 34.  <u>HPSC</u> simply stands for the proposition that parties to a civil insurance dispute can prove the materiality of a statement in a variety of ways, including evidence of what other underwriters have in fact done in the past in similar situations.  The case thus illustrates the flaw in the defendant's argument:  permitting the jury to rely on the IJ Decision is akin to admitting evidence of jury verdicts in similar situations as a guide to whether a particular statement *in this case* is material.

therefore, the false statements could *not* have affected the
agents' actions, nevertheless, a false statement to the agents
can still be shown to be material.

In *United States v. Turner*, 551 F.3d 657 (7th Cir. 2008),
the Court of Appeals for the Seventh Circuit rejected an argument
by the defendant that "the statements he made to the special
agents were not material because the agents already knew the
answers to the questions before they asked him."  551 F.3d at
662.  Because the standard is whether the information had "a
natural tendency to influence or [be] capable of influencing,"
the defendant's statements which "were aimed at misdirecting the
agents[5], ... satisfy the materiality requirement."  551 F.3d at
663-664.

Similarly, in *United States v. McBane,* 433 F.3d 344 (3rd
Cir. 2005), the Court of Appeals for the Third Circuit affirmed
the defendant's conviction for false statements by a police
officer concerning a confiscated rifle.  In that case, an
informant, who bought the rifle from the officer (and then
returned it at the officer's request when the FBI began
investigating), recorded conversations with the defendant
concerning the sale and return of the confiscated rifle.  During

---

[5]The IJ found that the defendant sought to mislead, that she
"sought to minimize her connection with the [MRND] party, and by
association, with people in the party who were implicated in the
genocide."  I.J. at 51.

8

one of the recorded conversations, that occurred after his interview by the FBI, the officer told the informant about his FBI interview and admitted that he had lied to the agents. 433 F.3d at 346-347. In that case, the "Government concede[d] that [the defendant's] false statements did not influence and were not capable of influencing the decisions or actions of the particular Agents to whom [the defendant] made the statements." 433 F.3d at 350. Nevertheless, the Court held that the statements were material because they were of the "type [that are] capable of influencing a *reasonable* decisionmaker." 433 F.3d at 351. The Court stated:

> In our view, the phrase "natural tendency" connotes qualities of the statement in question that transcends the immediate circumstances in which it is offered and inhere in the statement itself.

433 F.3d at 351. *See, also, United States v. Alemany Rivera*, 781 F.2d 229, 235 (1st Cir. 1985) ("test for materiality under 18 U.S.C. §1001 is ... whether [the statement] had the capacity to influence a government function"). *See, also, United States v. Edgar*, 82 F.3d 499, 510 (1st Cir. 1966) (affirming the conviction of a defendant for false statements in connection with workmen's compensation benefits even though the decision had already been made and the forms were filed late (so that, in that case, the lies could *not* have affected the decisionmaker), because the statements were of the kind that could influence a decision concerning benefits); *United States v. Safavian*, 649 F.3d 688,

9

691-692 (D.C. Cir. 2011) (affirming the defendant's conviction for lying to the FBI, even though it was "undisputed [that] the agent who interviewed [the defendant] knew, based upon his knowledge of the case file, that the incriminating statements were false when [the defendant] uttered them").

The defendant's argument that the "inquiry is more narrowly defined" in cases of false statements outside the context of the "broad investigative function" of a grand jury, ignores the cases discussed above, and misreads the cases she cites. *See*, *Defendant's Memorandum*, at fn. 27. *United States v. Freedman*, 445 F.2d 1220 (2d Cir. 1971), involved an investigation before the Securities and Exchange Commission ("SEC") concerning possible violations of law concerning the shares of three specific companies. The defendant's failure to disclose a profit-sharing agreement relating to the stock of a wholly unrelated corporation had no bearing and therefore was not material to the SEC's investigation of the three companies at issue. 445 F.2d at 1227; *see United States v. Mancuso*, 485 F.2d n.17 (2d Cir. 1973) (discussing the holding in *Freedman*).

The IJ focused on the impact the lies of the defendant had on her ultimate decision, *i.e.*, whether the fact that the defendant lied provides a basis for denying her asylum claim. The IJ did not analyze whether the subject matter of the lies were in areas of appropriate inquiry that were foreclosed because

of the false information provide by the defendant.  The lies are
material (whether or not they went to the "heart of the matter"),
because the information sought was "the type of information
relied upon" by an IJ.  *Blasini-Lluberas*, 169 F.3d at 67.  The
I.J.'s analysis was not of the issue of materiality as required
by the perjury statutes in the instant indictment, but whether
the inconsistencies in defendant's testimony were "central to her
asylum claim so as to warrant an adverse credibility finding as
to the merits of that application," I.J. at 53, or so "egregious"
as to "warrant a discretionary denial."  I.J. at 66.  *See also*,
*Decision of BIA denying motion for reconsideration* (defendant's
Exhibit C), at 4 ("As the Immigration Judge noted, this Board has
held that the danger of persecution generally will outweigh all
but the most egregious adverse factors.")

     A lie is material for the purpose of a criminal prosecution
for false statements or perjury even if it is neither "central"
nor "egregious."

     **Conclusion**

     Because the Immigration Decision is inadmissible under
Rules, 401, 403, and 803, this court should exclude any reference

to that document.

                              Respectfully submitted,

                              CARMEN M. ORTIZ
                              United States Attorney

                    By:   /s/ John A. Capin
                          ALOKE S. CHAKRAVARTY
                          JOHN A. CAPIN
                          Assistant U.S. Attorneys

                    Certificate of Service

     I hereby certify that this document, filed through the ECF
system, will be sent electronically to the registered
participants as identified on the Notice of Electronic Filing
(NEF).

                              /s/ John A. Capin
                              Assistant U.S. Attorney